IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**BRITTANY B. BIRD**,

Plaintiff,

No. 6:25-cv-01008-MC

v.

**OPINION AND ORDER**

**UNITED STATES OF AMERICA**, et al.

Defendants.

---

**MCSHANE, Judge**:

On January 24, 2025, Plaintiff Brittany Bird filed this medical malpractice action in Multnomah County Circuit Court. Notice Removal Ex. 3, ECF No. 1. On June 12, 2025, Defendant United States of America filed a Notice of Removal. The United States argues that Plaintiff's claim against it is untimely under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80. Because Plaintiff failed to exhaust her administrative remedies within the FTCA's two-year limitations period, and because Plaintiff is not entitled to equitable tolling, her claims against the United States are untimely. Defendant's Motion for Judgment on the Pleadings, ECF No. 36, is GRANTED.

## FACTUAL BACKGROUND[1]

This action arises from a series of medical visits and an eventual surgery which Plaintiff alleges caused her injury. Plaintiff's second amended complaint includes allegations of negligence against Umpqua Community Health Center and Michael Bigham. Second Am. Compl. ¶ 29, ECF No. 24. Michael Bigham, a Nurse Practitioner at Aviva Health, was Plaintiff's primary care physician. *Id.* ¶¶ 15, 18. Both Defendants were named in Plaintiff's original complaint. *Id.* ¶ 1.

Although Plaintiff's allegations are not particularly relevant to the United States's pending motion, Plaintiff generally alleges that several medical providers failed to treat or diagnose her lumbar disc herniation. The gist of Plaintiff's claim against the United States is that Bigham was negligent "[i]n failing to diagnose Plaintiff's developing cauda equina syndrome and arrange for her to be evaluated by a spine surgeon prior to April 20, 2023." *Id.* ¶ 29(d). A neurosurgeon finally evaluated Plaintiff and performed emergency surgery for "cauda equina syndrome." The parties agree that Plaintiff knew of the alleged malpractice no later than April 2023, when Plaintiff underwent emergency surgery.

More relevant to the pending motion is the fact that Plaintiff filed the Complaint in state court in January 2025. Notice Removal ¶ 1. The United States removed the case on June 12, 2025. Notice Removal 1. The Notice of Removal stated that Defendants Umpqua Community Health and Bigham "were acting as covered employees for purposes of this civil action and the FTCA is the exclusive remedy." Notice Removal ¶ 4. The Notice also substituted the United States for the two covered employees. Notice Removal ¶ 6.

---

[1] Courts apply the same standard of review for motions for judgment on the pleadings and motions to dismiss. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Therefore, at this stage, the Court takes all of Plaintiff's allegations as true. *See Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000) (noting standard for motions to dismiss).

In July 2025, Plaintiff voluntarily dismissed her claims against the United States so that she could exhaust her administrative remedies. ECF No. 16. In August 2025, Plaintiff presented a Form 95 Claim Notice to the Department of Health and Human Services ("DHHS"). Wagner Decl. ¶ 16, ECF No. 38. In April 2026, with no resolution to her administrative claim, Plaintiff filed a Second Amended Complaint naming the United States as a Defendant. Second Am. Compl. ¶ 2.

The United States moves for Judgment on the Pleadings, arguing that Plaintiff failed to present her tort claim against the United States to DHHS within two years of her claim accruing. Def.'s Mot. ¶ 2, ECF No. 36.

## STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim, the same standard of review applies to both motions. *Dworkin*, 867 F.2d at 1192.

"Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court must accept the complaint's factual allegations as true and construe those facts in the light most favorable to the non-movant. *Id.* However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft*

[2] Although *Twombly* dealt with a motion to dismiss under rule 12(b)(6), as noted above, the same standard of review applies to a motion for judgment on the pleadings. *Dworkin*, 867 F.2d at 1192.

*v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.*

## DISCUSSION

As discussed above, Plaintiff's Second Amended Complaint alleges negligence against two parties deemed to be employees of the Public Health Service. Second Am. Compl. ¶ 1. The parties agree that: (1) the United States of America is substituted for those two Defendants; and (2) Plaintiff's claim against the United States is governed by the FTCA. *Id*; 28 U.S.C. § 2679(d)(1).

Before bringing a tort claim against the United States, a plaintiff must exhaust their administrative remedies within two years of their claim accruing. § 2401(b). A claim accrues when a plaintiff is aware of the injury and "its immediate physical cause." *Hensley v. United States*, 531 F.3d 1052, 1057 (9th Cir. 2008) (quoting *Dyniewicz v. United States*, 742 F.2d 484, 487 (9th Cir. 1984)). Here, Plaintiff's claim accrued no later than April 2023, when she underwent emergency surgery for cauda equina syndrome; the syndrome she alleges her medical providers (negligently) failed to diagnose for several months. Therefore, absent equitable tolling, Plaintiff needed to exhaust her administrative remedies no later than April 2025.

### I. Plaintiff's claim accrued at the time of her discharge from the hospital

Claims against the United States are "forever barred" if they are not presented to the appropriate agency within two years of accrual. 28 U.S.C. § 2401(b). A medical malpractice claim accrues when the plaintiff knows of the existence of their injury and its cause. *Hensley*, 531 F.3d at 1056. Plaintiff argues that her claim did not accrue until June 2025, when the United States filed the Notice of Removal and "deemed" Aviva and Bigham federal employees. Pl.'s Resp. 13. According to Plaintiff, that notice "is the earliest conceivable date Plaintiff could, or reasonably should have, known that she had a claim against the United States of America, rather than against

Umpqua/Aviva and Bigham." *Id.* This is not the first time a plaintiff has made such an argument in a case involving the FTCA.

In *Hensley*, the plaintiff was seriously injured in a car accident involving a car driven by a Navy officer. *Id.* at 1054. The plaintiff sued the officer almost three years after the accident. *Id.* at 1055. The plaintiff argued that her claim did not accrue until she knew or should have known that the defendant was acting within the scope of his federal employment. *Id.* at 1057. Citing binding Ninth Circuit caselaw, and pointing to unanimous agreement of other circuits, the court noted that plaintiff's "'ignorance of the involvement of United States employees is irrelevant' to determining when their claim accrues." *Id.* at 1056 (quoting *Dyniewicz*, 742 F.2d at 487 and listing cases holding the same). *Hensley* is binding and directly on point. It undermines Plaintiff's argument that her claim did not accrue until she learned that Defendants Aviva and Bigham were deemed to be United States employees.

*Dyniewicz* is similarly fatal to Plaintiff's delayed accrual argument. In *Dyniewicz*, as here, the plaintiffs first learned that federal actors might have caused the accident after filing an action for negligence. 742 F.2d at 485. After discovery revealed that National Park Service rangers may have been involved, plaintiffs filed an administrative claim more than two years after the accident. *Id.* The court held that their claim accrued when they "knew both the fact of the injury and its immediate physical cause . . . ." *Id.* at 486. Further, "[t]heir ignorance of the involvement of United States employees is irrelevant" to the question of when their claim accrued. *Id.* (citing *Davis v. United States*, 642 F.2d 328, 330 (9th Cir. 1981), *cert. denied*).

As with the plaintiffs in *Hensley* and *Dyniewicz*, Plaintiff argues that her claim did not accrue until June 2025; when the United States removed this action and confirmed that the two defendants were deemed employees of the Public Health Service. Pl.'s Resp. 13, ECF No. 37.

According to Plaintiff, before that time, she "had neither factual, nor legal, basis for asserting a tort claim or filing suit against the Government." *Id.* Plaintiff provides no caselaw in support of her accrual argument. Regardless, binding precedent confirms that Plaintiff's argument is meritless. *Hensley* and *Dyniewicz* confirm that regardless of whether Plaintiff knew that either Defendant was in any way associated with the United States, her medical malpractice claim accrued no later than April 2023.

## **II. Plaintiff did not exhaust her administrative remedies within two years of her claim accruing**

Before filing her claim against the United States, Plaintiff had to exhaust her administrative remedies by presenting her claim to the agency. 28 § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993). A claim is "presented" when "a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident." 28 C.F.R. § 14.2(a); *see* 28 U.S.C. § 2675(a) (before filing an action, "claimant shall have first presented the claim to the appropriate Federal agency"). Plaintiff presented her administrative claim to DHHS in August 2025. Wagner Decl. ¶ 19.

Plaintiff argues that because DHHS had actual notice of Plaintiff's claim in March 2025—when Aviva's counsel forwarded a copy of Plaintiff's Complaint to counsel for DHHS—"the notice requirement of 28 U.S.C. Section 2401(b)" was satisfied within two years of April 2023. Pl.'s Resp. 12. Plaintiff, however, fails to cite any precedent to support this view and instead appeals to ideals of fairness. For example, Plaintiff characterizes the Government's argument as the "height of form over substance" and argues that "the Government cannot show prejudice." *Id.* at 14. Unfortunately for Plaintiff, her argument contrasts with the plain language of the statute and regulations, which clearly provide that Plaintiff, or Plaintiff's attorney, were required to present the claim to DHHS *before* filing a federal complaint. 28 C.F.R. § 14.2(a) (claim presented when

agency "receives from claimant . . . an executed Standard Form 95); 28 U.S.C. § 2675(a) ("claimant shall have first presented the claim" to the agency prior to filing federal action).

Additionally, Plaintiff's argument that her Complaint qualifies as an administrative claim likely fails because her Complaint does not appear to meet the FTCA's requirement that any administrative claim must be "accompanied by a claim for money damages in sum certain . . . for personal injury . . . alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a). To be sure, Plaintiff's Complaint contains a prayer for $10,000,000. Notice Removal, Ex. 3, 1. But Plaintiff seeks that amount for all of her damages, not just those caused by the United States. Plaintiff named nine defendants—including urgent care, hospital, and primary care providers—who provided different levels of care. The Court is skeptical that a global damage prayer from a tangled web of alleged medical malpractice could ever qualify as a claim for "money damages in sum certain" against a single federal agency. *See Warren*, 724 F.2d at 779 (FTCA exhaustion requirement drafted to allow agency to "place a value on the claim" prior to entering litigation).

More importantly, binding caselaw forecloses Plaintiff's "actual notice" argument. Because the FTCA waives sovereign immunity, any questions as to waiver "must be strictly construed in favor of the United States." *Ardestani v. Immigr. Naturalization Serv.*, 112 S. Ct. 515, 520 (1991). In enacting the exhaustion requirements, Congress intended to "encourage administrative settlement of claims against the United States and thereby to prevent an unnecessary burdening of the courts." *Jerves v. United States*, 966 F.2d 517, 520 (1992). The plaintiff in *Jerves* filed a federal action four months after presenting the agency with a timely tort notice, but two months before the agency denied her claim. *Id.* at 519. This contrasted with the FTCA's requirement that a plaintiff may not file a tort claim against the United States before: (1) the agency denies the claim in writing; or (2) six months after the plaintiff presented the claim to the agency.

28 U.S.C. § 2675(a). Although that agency certainly had actual notice of that claim, the court emphasized that the FTCA's exhaustion requirements "must be strictly adhered to." *Id.* at 521. The court rejected the plaintiff's argument for "a looser construction" of the FTCA's exhaustion requirement because doing so "would thus strip [the requirement] of much of its force." *Id.*

So too with Plaintiff's "actual notice" argument. In any action where a plaintiff effectuates service of a complaint on the United States within two years of accrual, the United States would unquestionably have actual notice of the claim within the FTCA's two-year statute of limitations. Plaintiff's argument for a "looser construction" of the FTCA's requirement that she present the agency with her tort claim before filing a federal action is a proposed exception that would swallow the rule. Far from aligning with Congressional intention to not burden the federal courts with negligence claims against the United States, Plaintiff's proposal would likely result in the opposite. Because an agency's receipt of a complaint would provide actual notice of the claim, FTCA plaintiffs could bypass administrative review entirely, proceeding instead directly to litigation. Such a result, however, is not what Congress intended in enacting the FTCA's exhaustion requirements.[3]

Ultimately, Plaintiff failed to present her claim to DHHS within two years of her claim accruing in April 2023. Therefore, absent equitable tolling, Plaintiff's claims against the United States are untimely.

**III. Plaintiff is not entitled to equitable tolling**

In the alternative, Plaintiff requests that this Court equitably toll the FTCA's limitations period. Pl.'s Resp. 15. A plaintiff seeking equitable tolling must demonstrate that they have been

[3] In fact, one goal of the exhaustion requirement was to protect federal agencies from wasting time, energy, and money in litigation when those resources could be better spent engaging in settlement discussions with claimants. *Warren v. United States Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 778–79 (9th Cir. 1984).

pursuing their rights diligently, and that some extraordinary circumstance stood in their way. *Redlin v. United States*, 921 F.3d 1133, 1140 (9th Cir. 2019). Plaintiff establishes neither. Plaintiff lists numerous reasons why equitable tolling should apply here. Pl.'s Resp. 17-18. They can be distilled into two distinct arguments: (1) that there was no way for Plaintiff to know or reasonably be expected to know that the defendants would be deemed federal employees; and (2) that professional courtesies extended by Plaintiff to the Defendant prevented timely filing of the claim.

**A. Plaintiff did not diligently pursue her rights**

The plaintiff in *Hensley* made a similar argument for diligence as Plaintiff does here, arguing that there was no reason for her to know that the defendant was a federal officer. *Hensley*, 531 F.3d at 1058. As demonstrated above, however, Plaintiff's "ignorance of the involvement of United States employees is irrelevant." *Dyniewicz*, 742 F.2d at 487. Indeed, "[i]n the absence of fraudulent concealment it is plaintiff's burden, within the statutory period to determine whether and whom to sue." *Davis v. United States*, 642 F.2d 328, 331 (9th Cir. 1981).

Further weakening her claim of diligence, Plaintiff is represented by self-proclaimed specialists in medical malpractice litigation. Wagner Decl. ¶ 2. They have tried over 200 medical malpractice cases and estimate that their firm has litigated more medical malpractice cases than any other plaintiff–side law firm in the state. *Id.* Despite their expertise in medical malpractice litigation, Plaintiff's counsel did not check DHHS's public database which would have informed them of the Defendants' federal connection. Other circuits have held that accessing this database is achievable through standard diligence and is reasonably expected of a competent attorney.[4] This Court agrees.

---

[4] *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 145 (2d Cir. 2011) (no tolling because attorney could have discovered the federal nature of the claim by either calling the government toll-free number or visiting the public website maintained by DHHS); *Sanchez v. United States*, 740 F.3d 47, 54-55 (1st Cir. 2014) (no tolling when counsel was either "unaware of the FTCA two-year deadline, or simply assumed, without asking that none of the possible

Additionally, Plaintiff's diligence argument is weakened by her delay in finally presenting her claim. Plaintiff waited to present her claim to DHHS until August 2025, two months after removal and six months after counsel for Umpqua Community Health Center informed Plaintiff's counsel that the United States provided the center with liability coverage throughout the FTCA. Wagner Decl. ¶ 4. Counsel's failure to demonstrate any urgency in presenting a claim to DHHS undermines any claim that they acted diligently to protect their client's rights.

**B. No extraordinary circumstance stood in Plaintiff's way**

Equitable tolling may apply if an opposing party tricks a plaintiff into letting the filing deadline pass. *Hensley*, 531 F.3d at 1057–58. Here, Plaintiff argues that professional courtesies which Plaintiff offered to opposing counsel presented an obstacle to timely filing.[5] Pl.'s Resp. 18. However, as was the case in *Hensley*, the government did not partake in any "fraudulent concealment, misconduct, or trickery, that would have lulled [Plaintiff] into letting [her] rights lapse." 531 F.3d at 1058. These courtesies were not extraordinary circumstances and were well within Plaintiff's control. In fact, one month before the statute of limitations ran, counsel for Aviva Health informed Plaintiff that the United States provided Aviva Health "with professional liability insurance coverage through the Federal Tort Claims Act (FTCA)." Wagner Decl. ¶ 10. But Plaintiff waited months to file the tort claim notice and, apparently, did not even bother to check the public database provided by DHHS. No circumstance, extraordinary or otherwise, stood

---

defendants were federal employees."); *Arteaga v. United States*, 711 F.3d 828, 834-35 (7th Cir. 2013) ("It's not asking too much of the medical malpractice bar to be aware of the existence of federally funded health centers that can be sued for malpractice only under the Federal Tort Claims Act[.]").

[5] Plaintiff granted Aviva Health's general counsel an extension in filing their response. Pl.'s Resp. 18. Further, Plaintiff notified the general counsel that Defendant Bigham did not have representation. *Id.* 19. Aviva Health's general counsel requested that Plaintiff not take any default action against either Defendant and Plaintiff agreed. *Id.* Plaintiff now seeks to define these courtesies as obstacles for purposes of equitable tolling. This is not so, as Plaintiff's counsel voluntarily granted these extensions to the Defendant and the Government did nothing to prevent Plaintiff from meeting their statutory deadline.

between Plaintiff and the ability to file a timely complaint with DHHS. The government simply did not take any steps to prevent Plaintiff from filing her claim on time.

More importantly, no wall or obstacle hid information from Plaintiff's counsel. No party made any effort to conceal their federal employment status. Regardless, the United States has no affirmative duty to direct a party of the need to properly exhaust a claim under the FTCA. *Dyniwicz*, 742 F.2d at 487 ("If the Government has been negligent, it has no general duty to announce that fact to the world at large."). The doctrine of equitable tolling is not offered to avoid the consequences stemming from one's own negligence. *Hensley*, 531 F.3d at 1058. It does not apply when, as is the case here, equity is sought to remedy an attorney's failure to exercise due diligence while identifying the parties' statuses in their case. *Id.* Therefore, Plaintiff is not entitled to equitable tolling, and her claims against the United States are untimely.

## CONCLUSION

"Regrettably, this is one of those unhappy cases in which a statute of limitations makes it impossible to enforce what was otherwise a valid claim." *Id.* Defendant's Motion for Judgment on the Pleadings, ECF No. 36, is GRANTED. Because the remaining claims are state claims against individual Defendants, the Court declines to exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367 (c)(3). This case is remanded to Multnomah County Circuit Court in Case No. 25CV04779.

IT IS SO ORDERED.

DATED this 19th day of November, 2026.

/s/ Michael McShane
**Michael J. McShane**
**United States District Judge**